FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Sep 29, 2023

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

CONNIE LYNN R., [1]

                    Plaintiff,

    v.

KILOLO KIJAKAZI,
COMMISSIONER OF SOCIAL
SECURITY,

                  Defendant.

NO:  2:21-CV-00335-LRS

ORDER DENYING PLAINTIFF'S
MOTION FOR SUMMARY
JUDGMENT AND GRANTING
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT

BEFORE THE COURT are the parties' cross-motions for summary judgment.

ECF Nos. 11, 12.  This matter was submitted for consideration without oral

argument.  Plaintiff is represented by attorney David L. Lybbert.  Defendant is

---

[1] The court identifies a plaintiff in a social security case only by the first name and

last initial in order to protect privacy.  See LCivR 5.2(c).

ORDER - 1

represented by Special Assistant United States Attorney Justin L. Martin.  The

Court, having reviewed the administrative record and the parties' briefing, is fully

informed.  For the reasons discussed below, Plaintiff's Motion, ECF No. 11, is

denied and Defendant's Motion, ECF No. 12, is granted.

## JURISDICTION

Plaintiff Connie Lynn R. (Plaintiff), filed for supplemental security income

(SSI) on June 24, 2019, and alleged an onset date of June 1, 2019.  Tr. 384-92.

Benefits were denied initially, Tr. 312-15, and upon reconsideration, Tr. 317-19.

Plaintiff appeared at a hearing before an administrative law judge (ALJ) on February

9, 2021.  Tr. 189-224.  On March 2, 2021, the ALJ issued an unfavorable decision,

Tr. 18-42, and on October 7, 2021, the Appeals Council denied review.  Tr. 1-7.

The matter is now before this Court pursuant to 42 U.S.C. § 1383(c)(3).

## BACKGROUND

The facts of the case are set forth in the administrative hearing and transcripts,

the ALJ's decision, and the briefs of Plaintiff and the Commissioner, and are

therefore only summarized here.

Plaintiff was 51 years old at the time of the hearing.  Tr. 194.  She obtained a

GED.  Tr. 195.  She has work experience as merchandiser and a deli worker.  Tr.

214-16.  Plaintiff testified that she is prevented from working by her knee.  Tr. 196.

She had knee replacement surgery and her knee is worse than it was prior to surgery.

Tr. 196.  Her knee is painful, locks up, and grinds and she has difficulty with stairs.

Tr. 196.  She has PTSD.  Tr. 198.  She has been diagnosed with fibromyalgia and

Sjogren's disease.  Tr. 199.  Her hips are painful, and she has weakness and loss of

mobility in her left arm due to a shoulder problem.  Tr. 199.  Fibromyalgia causes

achiness and inflammation, like she has the flu.  Tr. 200.  Plaintiff testified she is

unable to trust people.  Tr. 200.  She has anxiety and depression.  Tr. 200.  Her back

"goes out" two to three times a month.  Tr. 203.  Her emotional and physical

symptoms fluctuate.  Tr. 212.

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social

Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is

limited; the Commissioner's decision will be disturbed "only if it is not supported by

substantial evidence or is based on legal error."  *Hill v. Astrue*, 698 F.3d 1153, 1158

(9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a reasonable

mind might accept as adequate to support a conclusion."  *Id*. at 1159 (quotation and

citation omitted).  Stated differently, substantial evidence equates to "more than a

mere scintilla[,] but less than a preponderance."  *Id.* (quotation and citation omitted).

In determining whether the standard has been satisfied, a reviewing court must

consider the entire record as a whole rather than searching for supporting evidence in

isolation.  *Id.*

In reviewing a denial of benefits, a district court may not substitute its

judgment for that of the Commissioner.  *Edlund v. Massanari*, 253 F.3d 1152, 1156

(9th Cir. 2001).  If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012).  Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id*.  An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. at 1115 (quotation and citation omitted).  The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act.  First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A).  Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. § 416.920(a)(4)(i)-(v).

At step one, the Commissioner considers the claimant's work activity.  20 C.F.R. § 416.920(a)(4)(i).  If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two.  At this step, the Commissioner considers the severity of the claimant's impairment.  20 C.F.R. § 416.920(a)(4)(ii).  If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three.  20 C.F.R. § 416.920(c).  If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity.  20 C.F.R. § 416.920(a)(4)(iii).  If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  20 C.F.R. § 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity."  Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work

activities on a sustained basis despite his or her limitations, 20 C.F.R. §

416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's

RFC, the claimant is capable of performing work that he or she has performed in the

past (past relevant work). 20 C.F.R. § 416.920(a)(4)(iv). If the claimant is capable

of performing past relevant work, the Commissioner must find that the claimant is

not disabled. 20 C.F.R. § 416.920(f). If the claimant is incapable of performing

such work, the analysis proceeds to step five.

At step five, the Commissioner should conclude whether, in view of the

claimant's RFC, the claimant is capable of performing other work in the national

economy. 20 C.F.R. § 416.920(a)(4)(v). In making this determination, the

Commissioner must also consider vocational factors such as the claimant's age,

education and past work experience. 20 C.F.R. § 416.920(a)(4)(v). If the claimant

is capable of adjusting to other work, the Commissioner must find that the claimant

is not disabled. 20 C.F.R. § 416.920(g)(1). If the claimant is not capable of

adjusting to other work, analysis concludes with a finding that the claimant is

disabled and is therefore entitled to benefits. 20 C.F.R. § 416.920(g)(1).

The claimant bears the burden of proof at steps one through four above.

*Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to

step five, the burden shifts to the Commissioner to establish that (1) the claimant is

capable of performing other work; and (2) such work "exists in significant numbers

in the national economy."  20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d

386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

At step one, the ALJ found Plaintiff has not engaged in substantial gainful

activity since June 24, 2019, the application date.  Tr. 24.  At step two, the ALJ

found that Plaintiff has the following severe impairments:  fibromyalgia;

degenerative disc disease of the lumbar and cervical spine; degenerative joint

disease/osteoarthritis of the left knee, status post TKA; degenerative joint

disease/osteoarthritis of the left shoulder; Sjogren's syndrome; obesity; generalized

anxiety disorder; major depressive disorder; panic disorder, and posttraumatic stress

disorder.  Tr. 24.  At step three, the ALJ found that, Plaintiff does not have an

impairment or combination of impairments that meets or medically equals the

severity of a listed impairment.  Tr. 25.

The ALJ then found that Plaintiff has the residual functional capacity to

perform light work with the following additional limitations:

> She can stand up to one hour at a time and walk up to 15 minutes at a
> time, for a total of up to six hours in an eight-hour workday.  She has
> no limitations as to sitting in an eight-hour day.  She can never crawl
> or climb ladders, ropes, or scaffolds.  She can occasionally balance,
> stoop, kneel, crouch, and climb flights of stairs.  She can occasionally
> reach overhead with the non-dominant left arm.  She must avoid
> extreme cold and hazards such as dangerous moving machinery and
> unprotected heights.  She can perform only simple, routine, unskilled
> tasks with a reasoning level of two or less.  She can perform work
> involving only superficial interaction with the public and coworkers.

Tr. 27.

ORDER - 7

At step four, the ALJ found that Plaintiff is unable to perform any past relevant work.  Tr. 35.   At step five, after considering the testimony of a vocational expert and Plaintiff's age, education, work experience, and residual functional capacity, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff could perform such as production assembler, packager, or electrical accessories assembler.  Tr. 36.  Thus, the ALJ found that Plaintiff has not been disabled within the meaning of the Social Security Act since June 24, 2019, the date the application was filed.  Tr. 36.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying supplemental security income under Title XVI of the Social Security Act.  ECF No. 11.  Plaintiff raises the following issues for review:

1.   Whether the ALJ properly evaluated the medical opinion evidence;

2.   Whether the ALJ properly evaluated Plaintiff's symptom testimony; and

3.   Whether the ALJ made a legally sufficient step five finding.

ECF No. 11 at 11-18.

## DISCUSSION

**A.   Medical Opinions**

For claims filed on or after March 27, 2017, the regulations provide that the ALJ will no longer "give any specific evidentiary weight…to any medical opinion(s)…"  *Revisions to Rules Regarding the Evaluation of Medical Evidence*,

2017 WL 168819, 82 Fed. Reg. 5867-88 (Jan. 18, 2017); 20 C.F.R. §

404.1520c.[2]  Instead, an ALJ must consider and evaluate the persuasiveness of all

medical opinions or prior administrative medical findings from medical sources.

20 C.F.R. § 404.1520c(a) and (b).  Supportability and consistency are the most

important factors in evaluating the persuasiveness of medical opinions and prior

administrative findings, and therefore the ALJ is required to explain how both

factors were considered.  20 C.F.R. § 404.1520c(b)(2).  The ALJ may, but is not

required, to explain how other factors were considered.  20 C.F.R. §

404.1520c(b)(2); *see* 20 C.F.R. § 404.1520c(c)(1)-(5).

With regard to supportability, the regulations provide that the more relevant

the objective medical evidence and supporting explanations provided by a medical

source to support his or her opinion, the more persuasive the medical opinion will

be.  20 C.F.R. § 416.920c(c)(1)-(2).  With regard to consistency, the regulations

provide that the more consistent a medical opinion is with the evidence from other

---

[2] Plaintiff argues deference should be given to treating providers in weighing

medical opinions without regard to the new regulations.  ECF Nos. 11 at 11-12, 13

at 2.  The Ninth Circuit has concluded that the new regulations displace the

hierarchy of medical opinions and the "irreconcilable" and "incompatible" specific

and legitimate reasons standard.  *Woods v. Kijakazi*, 32 F.4th 785, 790-92 (9th Cir.

2022).

medical sources and nonmedical sources in the claim, the more persuasive the medical opinion will be.  20 C.F.R. § 416.920c(c)(1)-(2).

### 1. *Ryan Massoud, D.O.*

In October 2019, Dr. Massoud conducted a physical exam and noted that Plaintiff alleged complications due to arthritis of the knee, spine, and shoulder; Sjogren's syndrome; PTSD, anxiety, and mood disorder; fibromyalgia; chronic pain; fatigue; IBS; and insomnia.  Tr. 838-45.  Dr. Massoud assessed the following functional abilities and limitations:  ability to walk or stand six hours in an eight-hour workday; no restrictions on sitting; occasionally lift or carry 70 pounds and frequently lift or carry 35 pounds; limited to bending, would have difficulty with kneeling and crawling; no manipulative limitations; and limited to sit down job. Tr. 842.  The ALJ found Dr. Massoud's opinion is not persuasive.  Tr. 34.

First, the ALJ found Dr. Massoud's opinion is unclear and internally inconsistent.  Tr. 34.  The ALJ noted that Dr. Massoud opined that Plaintiff could stand or walk for six hours in an eight-hour day, but then limited her to a sit-down job.  Tr. 34.  Similarly, he stated that manual labor would be "very difficult" for Plaintiff but opined that she could carry up to 70 pounds.  Tr. 34.  The ALJ also pointed out that Dr. Massoud's statement that Plaintiff was "limited" with bending or would have "difficulty" with kneeling and crawling are not described in terms of a functional limitation.  Tr. 34.  Because of these inconsistencies, the ALJ's conclusion is supported by substantial evidence.

Second, the ALJ found Dr. Massoud's opinion is not consistent with the record as a whole.  Tr. 34.  The ALJ noted that Dr. Massoud's opinion that Plaintiff is limited to a sit-down job is not consistent with Plaintiff's ability to live independently and perform activities of daily living, or with the ability to engage in activities such as aerobic exercise and hiking.  Tr. 34 (citing Tr. 435-39, 479-83, 1077-78, 1156, 1231).  An ALJ may discount a medical source opinion to the extent it conflicts with the claimant's daily activities.  *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601-02 (9th Cir. 1999).  The ALJ also noted that Dr. Massoud's opinion that Plaintiff needed a sit-down job is inconsistent with Plaintiff's statement that she could stand as long as she wanted, although she would have extra pain.  Tr. 34 (citing Tr. 1290).  The ALJ's finding is based on a reasonable interpretation of the record and is supported by substantial evidence.

   *2. Kevyn Stroebe, D.O.*

   In October 2019, Plaintiff presented to Dr. Stroebe to request a disabled parking permit and a letter for the housing authority.  Tr. 881-882.  Plaintiff said that post-knee replacement surgery, her left knee was worse and limited her mobility and ability to walk up stairs.  Tr. 882.  Dr. Stroebe assessed that, "[a]t times mobility is limited to 200 feet or less."  Tr. 882.  He provided Plaintiff with a temporary parking permit, provided a letter for the housing authority, and recommended stretching, ice, activity as tolerated, and topical over-the-counter treatments.  Tr. 882.

1    The ALJ found Dr. Stroebe's statement regarding mobility limitations is not a

2    persuasive opinion statement.  Tr. 34.   A medical opinion is a statement from a

3    medical source about what a claimant can still do despite his or her impairments and

4    whether the claimant has impairment-related limitations or restrictions in the ability

5    to perform the physical, mental, environmental, or other demands of work activities.

6    20 C.F.R. § 404.1513.  The ALJ noted the statement was vague, indicating that

7    mobility was limited "at times," and there was no explanation for how often mobility

8    would be limited.  Tr. 34.  An ALJ may reject a medical statement that fails to

9    specify any functional limitations or describes limitations equivocally.  *See Ford v.*

10   *Saul*, 950 F.3d 1141, 1156 (9th Cir. 2020) (finding a physician's descriptions of the

11   plaintiff's limitations "as 'limited' or 'fair' were not useful because they failed to

12   specify functional limits").  The ALJ reasonably found Dr. Stroebe's statement is

13   vague, of little probative value, and unpersuasive.  Tr. 34.

14       *3.  Thomas Genthe, Ph.D.*

15       Dr. Genthe completed a DSHS Psychological/Psychiatric Evaluation form in

16   September 2019.  Tr. 828-31.  He diagnosed depressive disorder, PTSD, attention

17   deficit-hyperactivity disorder, cannabis use disorder, alcohol use disorder (sustained

18   remission) and stimulant use disorder (sustained remission).  Tr. 831.  Dr. Genthe

19   assessed the overall severity of Plaintiff's mental impairments as marked and

20   assessed six marked functional limitations.  Tr. 831-32.

21

1      The ALJ found Dr. Genthe's opinion is not persuasive.  Tr. 34.  First, the ALJ

2 found Dr. Genthe's opinion is not well-supported by his own mental status exam

3 findings.  Tr. 34.  The ALJ noted that although Dr. Genthe opined that Plaintiff had a

4 marked limitation in maintaining appropriate behavior in a work setting, his own

5 exam findings indicate that she was open, cooperative, and friendly and that her

6 responses were genuine, she understood instructions, and she appeared attentive and

7 interested in doing her best.  Tr. 833-34.  The ALJ's conclusion that these findings

8 are inconsistent with the inability to maintain appropriate behavior at work is a

9 reasonable interpretation of the evidence.

10      Plaintiff argues the ALJ's reasoning is "sorted cherry picking at best" and

11 argues the ALJ failed to consider some of Dr. Genthe's other findings.   ECF No. 11

12 at 16.  Plaintiff points to Personality Assessment Inventory (PAI) results, Plaintiff's

13 recall of only two of four objects after five minutes, and moderate difficulties

14 following the conversation during the exam.  ECF No. 11 at 16 (citing Tr. 834-35).

15 However, Plaintiff does not explain how these findings contradict the ALJ's

16 conclusion.  Furthermore, the ALJ did not find that Plaintiff has no mental

17 limitations; only that the marked limitation regarding maintaining appropriate

18 behavior assessed by Dr. Genthe was more severe than his findings suggested.

19      Second, the ALJ found Dr. Genthe's opinion is not consistent with the record

20 as a whole.  Tr. 34.  The ALJ noted that treatment records indicate that Plaintiff was

21 making progress regarding her mental health treatment goals.  Tr. 34 (citing Tr.

1139, 1144, 1204, 1226, 1259, 1261, 1265, 1275, 1306, 1321, 1332, 1337).  The

ALJ also found that Plaintiff's mental presentation was typically unremarkable in

terms of cognition, memory, attention, concentration, judgment, and behavior.  Tr.

34 (citing *e.g.*, Tr. 1148, 1238, 1248, 1268, 1282, 1301, 1307, 1309, 1313, 1316,

1327, 1337, 1431).  Lastly, the ALJ noted that Plaintiff reported to Dr. Genthe that

she was not employed primarily due to physical impairments, which the ALJ found

to be inconsistent with Dr. Genthe's opinion.  Tr. 34, 828, 832.  The ALJ's finding is

supported by substantial evidence.

Plaintiff cites treatment records from October 2018 indicating some abnormal

mental status exam findings, but these records predate the alleged onset date of June

1, 2019, and are of limited relevance.  ECF No. 11 at 17 (citing Tr. 566, 573, 591).

Plaintiff also cites two October 2019 treatment records early in the relevant mental

health treatment record.  ECF No. 11 at 17 (citing Tr. 881, 883).  A mental status

exam was notable for restlessness, pressured and animated speech, anxious mood,

and tangential and preservative thought process.  Tr. 883.  Plaintiff's PHQ-9 and

GAD-7 scores indicated moderate depressive disorder and mild anxiety.  Tr. 883-84.

Plaintiff was referred to a therapist, and numerous symptoms of PTSD were reported

or observed.  Tr. 881. According to Plaintiff, this means that the record as a whole

does not support the ALJ's findings regarding Dr. Genthe's opinion.  However,

these two records do not constitute a longitudinal view of the record overall, and

even if they did, the ALJ's interpretation of the record is reasonable.  The existence

of a legally supportable alternative resolution of the evidence does not provide a sufficient basis for reversing an ALJ's decision that is supported by substantial evidence. *Sprague v. Bowen*, 812 F.2d 1226, 1229 (9th Cir.1987). The ALJ's findings regarding Dr. Genthe's opinion are supported by substantial evidence.

### 4. Patrick Metoyer, Ph.D.

In October 2019, Dr. Metoyer conducted a psychological evaluation and diagnosed panic disorder, PTSD, and depressive disorder. Tr. 846-50. He opined that Plaintiff has the ability to reason and understand; she has some adaptation skills; remote, recent, and immediate memory are intact; sustained concentration and persistence are adequate; ability to interact with coworkers and the public is likely moderately impaired; ability to maintain regular attendance in the workplace is moderately impaired; ability to complete a normal work day or work week without interruption from psychological symptoms is likely moderately impaired; and ability to deal with the usual stress encountered in the workplace is markedly impaired if it involves persistent activity, complex tasks, task pressure, or interacting with other individuals. Tr. 850.

The ALJ found Dr. Metoyer's opinion somewhat persuasive. Tr. 33. The ALJ found the assessment of moderate limitations is mostly supported by his explanation and mental status exam findings and is consistent with the record as a whole. Tr. 33. However, the ALJ noted that the opinion was not stated in a way that is helpful in assessing residual functional capacity. Tr. 33. The residual functional

capacity is "the most [a claimant] can still do despite [her] limitations."  20 C.F.R. §

416.945(a)(1).  For example, the ALJ noted that Dr. Metoyer found Plaintiff

"moderately impaired" in several areas but did not state what Plaintiff can do despite

those limitations.  Tr. 33.  Nonetheless, the ALJ considered the moderate limitations

assessed by Dr. Metoyer in the RFC finding.  *See Vertigan v. Halter*, 260 F.3d 1044,

1049 (9th Cir. 2001) ("It is clear that it is the responsibility of the ALJ, not the

claimant's physician, to determine [RFC].").

The ALJ also found unpersuasive Dr. Metoyer's opinion that Plaintiff is

markedly limited in her ability to deal with the usual stress encountered in the

workplace if the work involves persistent activity, task pressure, or interacting with

other individuals.  Tr. 33, 850.  The ALJ found this limitation is not consistent with

the record as a whole which indicates that Plaintiff can tolerate superficial

interaction with the public and coworkers.  Tr. 33.  The ALJ noted Plaintiff is able to

go out alone, go out in public for church, shopping, or other activities, and presents

on examination as cooperative, pleasant, and friendly.  Tr. 33 (citing *e.g.*, 435-39,

479-83).  The ALJ also found Plaintiff is able to tolerate persistent activity and task

pressure if limited to simple, routine, unskilled tasks.  Tr. 33.  The ALJ found this is

supported by Plaintiff's ability to live independently, complete daily tasks such as

self-care, preparing meals, cleaning, going shopping, and paying bills.  Tr. 33 (citing

Tr. 435-39, 479-83).  The ALJ's conclusion is supported by substantial evidence.

Plaintiff argues the ALJ overlooked findings which, according to Plaintiff, support the limitations assessed by Dr. Metoyer.  ECF No 11 at 16.  Plaintiff points to mental status exam findings that Plaintiff's mood and affect were down and depressed, concentration findings were abnormal because Plaintiff could not perform serial 7's, and her digit span which measures immediate memory was four digits forward and two digits in reverse.  ECF No. 11 at 16 (citing Tr. 848-49).  However, the ALJ's limitation to simple, routine, unskilled tasks captures these abnormal findings of concentration and memory in the RFC.  *See infra.*

   5.  *Vincent Gollogly, Ph.D., and Eugene Kester, Ph.D.*

In October 2019, Dr. Gollogly, a reviewing psychologist, assessed moderate limitations in the ability to carry out detailed instructions; maintain attention and concentration for extended periods; perform activities within a schedule and maintain regular attendance; and complete a normal workday and workweek without interruptions from psychological symptoms; interact appropriately with the public; and respond appropriately to changes in the work setting. Tr. 285-86.  He opined that Plaintiff is able to maintain concentration, persistence, and pace for up to two hours continuously, maintain adequate attendance, and complete a normal workday/workweek within the tolerance of a competitive workplace.  Tr. 286.  Dr. Gollogly explained that Plaintiff should avoid working with the public and in situations in which a high level of consistent, more intense collaboration is needed.  Tr. 286.  Further, Dr. Gollogly indicated that Plaintiff will be able to respond

appropriately to normal hazards and travel and will be able to set goals and make plans independently of others.  Tr. 286.

In March 2020, Dr. Kester reviewed the record and assessed essentially the same limitations as Dr. Gollogly.  Tr. 305-07.  Dr. Kester noted that Plaintiff's concentration, persistence, and pace may fluctuate because of difficulty concentrating and remaining focused due to psychological symptoms.  Tr. 306.  Nonetheless, Dr. Kester found Plaintiff retains the ability to carry out simple and most complex tasks on a consistent basis in a competitive work environment.  Tr. 306.  Dr. Kester noted Plaintiff may not be well suited to work with the public but is still capable of superficial contact with others without significant collaboration and remains capable of accepting instruction from supervisors.  Tr. 306.  Dr. Kester also found that Plaintiff might have some difficulties setting realistic goals independently but could still work toward goals set by an employer or supervisor.  Tr. 307.

The ALJ found the opinions of Drs. Gollogly and Kester somewhat persuasive because they are well supported with reference to the medical and other evidence of record, and because their assessments are mostly consistent with the record as a whole.  Tr. 33.  The ALJ accounted for the opinions of Drs. Gollogly and Kester by finding Plaintiff is limited to simple, routine, unskilled tasks and only superficial interaction with the public and coworkers.  Tr. 33; *see* Tr. 27.

Plaintiff argues the opinion of Dr. Gollogly is "internally inconsistent" because he assessed moderate limitations in various abilities but then concluded

Plaintiff could adequately perform those abilities in competitive work. ECF NO. 11 at 17. Plaintiff's argument misunderstands the RFC analysis, which is the most a claimant can do, despite her limitations. 20 C.F.R. § 416.945(a)(1). A "moderate limitation" is not an expression of the most a claimant can do. Drs. Gollogly and Kester assessed limitations, then expressed the limitations in terms of what Plaintiff can do. Plaintiff also argues the RFC does not address limitations in concentration, persistence, or pace. However, Plaintiff fails to acknowledge that the RFC limits Plaintiff to "simple and routine unskilled tasks," Tr. 33, limitations which the Ninth Circuit has determined sufficiently address "moderate" mental limitations, including limitations in interacting with others. *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008); *Rogers v. Comm'r of Soc. Sec. Admin.*, 490 Fed. App'x. 15, 17-18 (9th Cir. 2012). The ALJ did not err in evaluating the opinions of Drs. Gollogly and Kester or in applying their assessments to the RFC finding.

## B. Symptom Testimony

An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina*, 674 F.3d at 1112 (internal quotation marks omitted). Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ]

gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal citations and quotations omitted).

First, the ALJ found the objective medical findings are not generally consistent with the degree of limitation alleged. *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (indicating subjective pain testimony may not be rejected solely because it is not corroborated by objective medical findings, but noting the medical evidence is a relevant factor in determining the severity of a claimant's pain and its disabling effects). Second, the ALJ found Plaintiff's symptoms improved with treatment. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008) (recognizing that a favorable response to treatment can undermine a claimant's complaints of debilitating pain or other severe limitations). Third, the ALJ found Plaintiff's level of functioning and activities are not consistent with the degree of impairment alleged. *See Rollins*, 261 F.3d at 857 (determining it is reasonable for an ALJ to consider a claimant's activities which undermine claims of totally disabling pain in evaluating symptom claims). Fourth, the ALJ found Plaintiff's work history is sporadic and inconsistent. Tr. 28-31. *See Thomas v. Barnhart*, 278 F.3d 948, 959 (9th Cir. 2002) (indicating a poor work history before the alleged disability period may be a legitimate basis for discounting a claimant's subjective symptom claims because it suggests a propensity to avoid work). All of these are legitimate reasons for giving less weight to a claimant's symptom claims and the ALJ discussed them

in detail with citations to the record.  Tr. 28-31.  The ALJ's discussion indicates that these are clear and convincing reasons supported by substantial evidence.

Plaintiff argues that (1) the ALJ did not provide clear and convincing reasons for rejecting her subjective complaints; (2) the ALJ did not identify what testimony was not credible or what evidence undermines the allegations; (3) the ALJ made "vague assertions" that her testimony is inconsistent with the record; and (4) the ALJ disregarded Plaintiff's symptom claims solely because the objective medical evidence does not substantiate the degree of symptoms alleged.  ECF No. 11 at 12-13.  None of these arguments is developed with specificity or citations to the record.  As noted above, the ALJ cited four legitimate reasons for giving less weight to Plaintiff's symptom claims and discussed them in detail with citations to substantial evidence in the record.  These general arguments do not establish any error.

On reply, Plaintiff argues for the first time that the ALJ's consideration of Plaintiff's daily activities and work history is improper.  ECF No. 13 at 2-4.  Contrary to Plaintiff's argument that the ALJ must show that activities are both transferable to employment and inconsistent with an impairment, "[e]ven where [Plaintiff's daily] activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment."  *Molina*, 674 F.3d at 1113.  As the ALJ noted, Plaintiff described her pain as "crippling" on multiple occasions (Tr. 29, 1114, 1175, 1222, 1641, 1725), yet lives independently, cares for her own needs,

1    does chores, drives, walks, exercises, ships, pays bills, plays games, and goes to

2    church.  Tr. 29 (citing Tr. 435-39, 479-83, 1077, 1156, 1231).  The ALJ reasonably

3    found these activities indicate that she is not as limited as alleged.

4        Plaintiff also argues that her work history "should only be used if the

5    Claimant has a medical condition that recently arose, but if the Claimant has a life-

6    long issue with a condition or if the condition predates the alleged onset date, that

7    struggling to work and only working in a limited fashion is not a reason to disregard

8    the limitation."  ECF No. 13 at 6.  First, Plaintiff cites no authority for this proposed

9    rule.  Second, Plaintiff has been previously determined to be not disabled in at least

10    two prior claims.  Tr. 21.  Even if her condition was "life-long," her work history is

11    not impacted by disability within the meaning of the Social Security Act.  The ALJ

12    properly considered Plaintiff's work record.

13        With no citation to the record or any authority, Plaintiff additionally raises for

14    the first time on reply that the diagnosis of fibromyalgia requires certain

15    considerations by the ALJ.  ECF No. 13 at 6.  The Court may decline to address this

16    issue because it was not raised with specificity in Plaintiff's opening brief.  *See*

17    *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008).

18    The ALJ's consideration of the longitudinal record and the reasoning explained in

19    the decision is legally sufficient and adequately accounts for Plaintiff's

20    fibromyalgia.

21

1       Elsewhere in briefing, Plaintiff asserts the ALJ's reference to "unremarkable"

2  imaging is vague.  ECF No. 11 at 5-6.  Plaintiff does not cite the ALJ's decision, so

3  it is not entirely clear what statement is referenced.  Presumably, Plaintiff refers to

4  the ALJ's review of the record and a finding that "More recent imaging studies have

5  also been fairly unremarkable." Tr. 30.  Contrary to Plaintiff's argument, the ALJ

6  cited the date, type of imaging, and page number of the MRI of the cervical spine

7  and x-ray of the left shoulder referenced.  Tr. 30.  Plaintiff cites a July MRI of the

8  lumbar spine, which is not one of the studies referenced in that particular paragraph

9  by the ALJ, arguing that it is not "unremarkable."  ECF No. 11 at 6 (citing Tr. 1188).

10  However, the ALJ discussed the July 2020 MRI of the lumbar spine and noted that

11  the neurosurgeon indicated that he did not see "any significant nerve compression

12  that would cause her symptoms."  Tr. 1285.  There is no error or inaccuracy by the

13  ALJ in evaluating the imaging evidence.

14       Plaintiff further argues that the ALJ "should not be allowed to downplay" her

15  knee impairment, asserts that numerous findings of normal gait are offset by other

16  findings and declares the outcome of her knee replacement as "fair."  ECF No. 11 at

17  6-7 (citing Tr. 679, 691, 705, 951).  The ALJ thoroughly considered the record for

18  the relevant period and treatment records related to Plaintiff's knee.  At most,

19  Plaintiff's argument is another interpretation of the evidence and does not establish

20  that the ALJ erred in law or fact.  Plaintiff argues for another interpretation of the

21  evidence but does not establish that the ALJ erred in fact or law in analyzing the

evidence.  The ALJ, not this court, is responsible for reviewing the evidence and resolving conflicts or ambiguities. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir.1989); *see also Richardson v. Perales*, 402 U.S. 389, 400 (1971).

**C.    Step Five**

Plaintiff asserts the ALJ erred at step five because the finding that there are jobs available that Plaintiff can perform was based on an incomplete hypothetical. ECF No. 11 at 18.   The ALJ's hypothetical must be based on medical assumptions supported by substantial evidence in the record which reflect all of a claimant's limitations.  *Osenbrook v. Apfel*, 240 F.3D 1157, 1165 (9th Cir. 2001).  The hypothetical should be "accurate, detailed, and supported by the medical record." *Tackett*, 180 F.3d at 1101.  The ALJ is not bound to accept as true the restrictions presented in a hypothetical question propounded by a claimant's counsel. *Osenbrook*, 240 F.3d at 1164; *Magallanes v. Bowen*, 881 F.2d 747, 756-57 (9th Cir. 1989); *Martinez v. Heckler*, 807 F.2d 771, 773 (9th Cir. 1986).  The ALJ is free to accept or reject these restrictions as long as they are supported by substantial evidence, even when there is conflicting medical evidence.  *Magallanes*, 881 F.2d at *id.*  Plaintiff's argument assumes the ALJ in evaluating the RFC and other evidence. As discussed throughout this decision, the ALJ's findings are supported by substantial evidence.  Thus, there is no error at step five.

## CONCLUSION

Having reviewed the record and the ALJ's findings, this Court concludes the ALJ's decision is supported by substantial evidence and free of harmful legal error.

Accordingly,

1. Plaintiff's Motion for Summary Judgment, ECF No. 11, is DENIED.

2. Defendant's Motion for Summary Judgment, ECF No. 12, is GRANTED.

**IT IS SO ORDERED**.  The District Court Clerk is directed to enter this Order and provide copies to counsel.  Judgment shall be entered for Defendant and the file shall be **CLOSED**.

**DATED** September 29, 2023.

LONNY R. SUKO
Senior United States District Judge

ORDER - 25